UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                                                  Cr. Case No. 07-20559-FL

Antonio Maurice Whitley,                                          Honorable Sean F. Cox

    Defendant.

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant Antonio Maurice Whitley ("Whitley") is currently charged in an Indictment with two counts. In Count I of the Indictment, Whitley is charged with conspiracy to distribute crack cocaine. In Count III, he is charged with possession of cocaine with intent to distribute. The matter is currently before the Court on Whitley's Motion to Suppress Evidence, wherein he seeks to suppress $1,889.00 in cash that was seized from him on May 17, 2007. The parties have fully briefed the issues and the Court held an evidentiary hearing on February 3, 2009. For the reasons below, the Court shall DENY the motion.

### BACKGROUND

Whitley was indicted on November 14, 2007. Count I of the Indictment charges him with conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846. Count I alleges that from about May 1, 2007, until about May 17, 2007, at 3510 Winona, Flint, Michigan, Whitley and a co-defendant conspired with each other, and other persons, to possess with intent to distribute, and to distribute at least fifty (50) grams of a mixture or substance containing cocaine

1

base, commonly known as "crack."

Count III charges Whitley with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841.  Count III alleges that on or about June 18, 2007, at or near the intersection of Interstate 75 and Dort Highway in Grand Blanc Township, Defendant knowingly possessed with intent to distribute cocaine.

On December 8, 2008, Whitley filed the instant Motion to Suppress Evidence, seeking to suppress $1,889.00 in cash that was seized from him on May 17, 2007.  In his motion, Whitley stated that on May 17, 2007, law enforcement officers had a search warrant for 3510 Winona Street in Flint, Michigan and were conducting surveillance there prior to executing the warrant. He contends that before executing the warrant, the officers observed Whitley enter a vehicle driven by another person and drive some distance away.  He contends the officers "[u]ltimatley approached this vehicle and stopped and searched the person of Defendant.  Seized from Defendant's person was $1,889 in U.S. currency."  (Def.'s Br. at 4).  In his motion, Whitley notes that the officers did not have a warrant for his arrest.  Whitley acknowledges that officers may conduct "pat-down" searches upon drivers and their passengers "upon reasonable suspicion that they may be armed and dangerous," but claims that no reasonable suspicion existed here.

In response to the motion, the Government asserts that the seizure of the cash "was justified by the authority conferred by the search warrant, as explained in *Michigan v. Summers*, 452 U.S. 692 (1981), and *Burchett v. Kiefer*, 310 F.3d 937 (6th Cir. 2002)."  (Gov't's Resp. Br. at 2). [1]

---

[1] The Government further asserted that even if the frisk was not justified, the cash would inevitably have been found and seized during Whitley's legal detention.  (*Id*. at 2-3).

With the issue having been so framed by the parties, the Court held an evidentiary hearing on the motion on February 3, 2009. At that time, the Government presented three witnesses: 1) ATF Agent Mark Kloostra; 2) Officer Steve Colosky; and 3) Officer Donald Urban. Defense Counsel cross-examined those three witnesses and then declined to present any additional witnesses.

For purposes of this motion, the Court makes the following factual findings from the testimony given at the evidentiary hearing.

## FINDINGS OF FACT

After having received information from a reliable confidential informant about illegal drug sales at a residence located at 3510 Winona in Flint, Michigan ("the Residence"), on May 15, 2007, ATF Agent Mark Kloostra obtained a federal search warrant for the Residence. The informant had indicated that the sales of crack cocaine, cocaine and marijuana were made at the Residence by individuals known as "Ace" and "G." Based on prior contact with him and other information, Agent Kloostra believed that Whitley was "Ace."

Two days later, on May 17, 2007, Agent Kloostra was working on location, at a "grow operation," with other officers. While there, Officer Steve Colosky told Agent Kloostra that a reliable informant had informed him that a large quantity of crack cocaine was currently at the Residence, as were the suspects known as "Ace" and "G." Based on that information, Agent Kloostra decided that the warrant should be executed that day.

He arrived at the vicinity of 3510 Winona at approximately 12:30 p.m. Before the officers began to execute the search warrant, however, Agent Kloostra notice a gold Taurus (the

"Taurus") in front of the Residence. Whitley then exited the Residence and entered the Taurus, which was being driven by a female. As the Taurus proceeded to drive northbound away from the Residence, Agent Kloostra radioed for other officers to stop the Taurus. At that time, the officers at the scene did not have a marked patrol car.

Officer Colosky, who was in the vicinity to help execute the search warrant, heard the radio call and began following the Taurus in his unmarked car. Another car, a marked patrol car, then became involved as well and ultimately stopped Whitley in a driveway on Burgess Street – approximately two or three streets away from the Residence. The officers that responded to the radio call decided to stop the Taurus once it was a few streets away, so that the stop would not be seen by any occupants that remained in the Residence.

Officer Colosky approached the Taurus to assist. Officer Colosky identified Whitley as "Ace" and, in order to ensure his own protection, handcuffed Whitley. He then conducted a pat-down of Whitley to determine if he had any weapons. He found no weapons but felt something that felt like a wad of cash in Whitley's pocket. Officer Colosky did not remove the cash from Whitley's pocket, but commented something to the effect of, "Ace, do you have a job yet, that seems like a lot of cash." Whitley responded that he did not have a job and confirmed that it was a lot of cash.

At the conclusion of the stop, which lasted approximately fifteen minutes, Whitley was transported back to the Residence in the marked patrol car. Officer Colosky also drove back to the Residence in his own car.

When the officers arrived back at the Residence, the search warrant was in the process of being executed. Officer Colosky entered the Residence and assisted in the search. During the

search, the officers found a significant amount of cocaine in the closet of a bedroom. Officer Donald Urban found, in that same bedroom, several items and documents with Whitley's name on them.[2] After learning this, Officer Colosky advised that he believed that Whitley had a large amount of cash on him, and suggested that Officer Urban seize the cash from Whitley. Officer Urban then went outside and seized $1,889.00 in cash from Whitley.

## ANALYSIS

In response to Whitley's Motion to Suppress Evidence, the Government asserts that the stop of the vehicle and subsequent seizure of the cash was justified by the authority conferred by the search warrant, as explained in *Michigan v. Summers*, 452 U.S. 692 (1981).

In that case, "[a]s Detroit police officers were about to execute a warrant to search a house for narcotics, they encountered respondent descending the front steps. They requested his assistance in gaining entry and detained him while they searched the premises." *Summers*, 452 U.S. at 693. The Supreme Court held that, for Fourth Amendment purposes, "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Summers*, 452 U.S. at 705. The Court noted that the detention of the defendant was justified to prevent flight of the individual, to minimize the risk of harm to the officers, and to effectuate an orderly completion of the search. *Id*. at 702-03.

Whitley does not dispute the holding in *Summers,* but attempts to distinguish it from the instant case. Whitley attempts to factually distinguish his case from *Summers* in that: 1) he was stopped several blocks away from the Residence, rather than while "descending the steps," and

---

[2]Whitley resided at the Residence at the time the search warrant was executed.

2) once he was brought back to the scene, he was detained outside the Residence, not inside the Residence.  He also contends that this case should not be governed by *Summers* because the factors that justified *Summers* are "completely absent here."  Finally, Whitley suggests that he did not actually reside at the Residence and, therefore, *Summers* should not apply.  The Court finds Whitley's arguments unpersuasive, in light of the following cases: *United States v. Cochran*, 939 F.2d 337 (6th Cir. 1991); *United States v. Head*, 216 Fed.Appx. 543 (6th Cir. 2007); and *United States v. Leake*, 95 F.3d 409 (E.D. Mich. 1996).

1.   Proximity To Residence:

First, Whitley notes that in *Summers*, the defendant was "descending his steps," whereas Whitley was stopped "several blocks away" from the Residence.  The same argument was made by the defendant in *Cochran,* and was rejected by the Sixth Circuit:

> Defendant does not dispute the holding in *Summers,* but attempts to factually distinguish it from the instant case.  In *Summers*, police stopped the individual as he was "descending the front steps."  *Id*. at 693, 101 S.Ct. at 2589.  In contrast here, police stopped defendant after he had driven a short distance from his home.  We do not find this distinction significant, however.  *Summers* does not impose upon police a duty based on geographic proximity (*i.e*., defendant must be detained while still on his premises); rather, the focus is upon police performance, that is, whether the police detained defendant as soon as practicable after departing from his residence.  Of course, this performance-based duty will normally, but not necessarily, result in detention of an individual in close proximity to his residence.
> The initial detention of the police was proper in light of *Summers*.  The record does not indicate exactly how far defendant had traveled before being stopped.  The record does indicate that the address of defendant's residence was 6316 Aspen Ridge Boulevard and the police stopped him "almost immediately after exiting his residence."  *Id*. at 53.  Other testimony indicates that defendant was stopped "a short distance" from his residence, *id*. at 205.  We do not find the actions of the police improper in light of the short distance traveled by defendant . . .

*Cochran*, 939 F.3d at 339.  The same argument was also raised and rejected in *Head*, where the

6

defendant had been stopped approximately one mile from the premises to be searched. *Head,* 216 Fed.Appx. 543 (6th Cir. 2007); *see also Yates*, 132 F.Supp.2d at 568 (rejecting same argument, where defendant had been stopped two miles away from premises).

Like the situations seen in *Cochran, Head* and *Yates,* the officers in this case stopped and detained Whitley as soon as was practicable after he departed the Residence. The Officers at the scene when Whitley left the residence did not have a market patrol car there and therefore radioed for a marked patrol car to make the stop. Officer Colosky testified that, after seeing Whitley leave the Residence, the officers decided to stop Whitley a few streets away from the Residence, so that the stop would be out of the view of any remaining occupants of the Residence. Whitley's car was therefore followed for a few blocks before he was stopped by the market patrol car. The Court therefore rejects Whitley's argument that *Summers* does not apply because the vehicle was stopped a few blocks away from the Residence.

2.  Location Of Defendant While Detained At The Residence:

Next, Whitley attempts to distinguish this case from *Summers* in that he was not taken into the Residence by the officers when they returned to the Residence, but rather, was secured in or near a police patrol car outside of the Residence. The Court does not find this distinction significant. The same result was accomplished regardless of whether Whitley was detained inside of or in front of the Residence – Whitley was secured in order to minimize the risk of harm to officers and help ensure that the search was effectuated in an orderly manner.

3.  Alleged Lack Of "*Summers* Factors:"

The *Summers* Court concluded that the detention of the defendant was justified in order to prevent flight of the individual, to minimize the risk of harm to the officers, and to effectuate

an orderly completion of the search. *Id.* at 702-03.

Whitley asserts that because he was not aware, prior to his detention, that a warrant was going to be executed at the Residence, there was no risk of harm to the agents.

The Court finds this argument unpersuasive. Although Whitley was seen traveling away from the Residence shortly before the search warrant was executed, the officers had no knowledge of Whitley's intended destination or how soon he would return. Whitley could have returned to the Residence during the execution of the search warrant, thereby jeopardizing the safety of the officers or disrupting the orderly completion of the search. *Yates, supra*, at 568.

4.      Suggestion That He Did Not Reside At The Premises:

Finally, although he never made such an assertion in his opening motion or at the hearing, Whitley appears to suggest[3] that he did not actually reside at the Residence. Whitley then asserts that *Summers* should therefore not be applied to him. He has not presented any legal authority to support his position, nor did he present any witnesses or evidence at the hearing to establish that he did not reside at the Residence on the date in question.

Moreover, as indicated *supra*, the Court concludes that the evidence presented at the evidentiary hearing established by a preponderance of the evidence that Whitley resided at the premises. The Court therefore rejects this final argument.

CONCLUSION & ORDER

For the reasons above, **IT IS ORDERED** that Defendant's Motion to Suppress Evidence is **DENIED.**

---

[3] Whitley does not actually assert that he did not reside at the Residence. Rather, in his supplemental brief Whitley states that the officers "had no information" that Whitley "resided at that location." (Def.'s Suppl. Br. at 4).

**IT IS SO ORDERED**.

                                      s/Sean F. Cox
                                      Sean F. Cox
                                      United States District Judge

Dated: February 19, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 19, 2009, by electronic and/or ordinary mail.

                                      s/Jennifer Hernandez
                                      Case Manager